UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHEN LIN, JIANQUN ZHANG,
DI PAN, BO LIU, and JIALIANG PAN,

              Plaintiffs,                        <u>MEMORANDUM AND ORDER</u>

     -against-                          16-CV-02474 (RPK) (RML)

THE DOLAR SHOP RESTAURANT GROUP,
LLC, d/b/a DOLAR SHOP,
SHANGHAI SHENZHUANG THE DOLAR
SHOP CATERING MANAGEMENT CO., LTD.,
YU ZHANG, TZU CHEUNG a/k/a KEN
CHEUNG,  XIN FENG WANG a/k/a RUBY
WANG, YING NAN QI a/k/a FRANK QI, GE LI
a/k/a JERRY LI, QIN BO LIANG a/k/a ALVIN
LIANG, ZHONG BAO YUAN, QIN CHUN
GAO, and XIANG CHAO LIU,

              Defendants.
-------------------------------------------------------------X
RACHEL P. KOVNER, United States District Judge.

      Plaintiffs filed this action alleging violations of the Fair Labor Standards Act, 29 U.S.C.

§ 201 *et seq.*, and state law in connection with work they performed at a restaurant in Flushing,

New York.  *See* Compl. ¶¶ 1-5 (Dkt. #1).  Plaintiffs initially brought suit against their alleged

former employer, The Dolar Shop Restaurant Group, LLC, and four individuals alleged to own

and operate the Flushing restaurant.  *See id.* ¶¶ 14-27.  Plaintiffs later amended the complaint to

name as defendants Shanghai Shenzhuang The Dolar Shop Catering Management Co., Ltd.

("Shanghai Shenzhuang"), a foreign Chinese corporation affiliated with The Dolar Shop

Restaurant Group, and Ge Li, a shareholder and the chief executive officer of Shanghai

Shenzhuang.  *See* Am. Compl. ¶¶ 20-29, 36-38 (Dkt. #50).

      Mr. Li and Shanghai Shenzhuang have moved to dismiss the amended complaint for

insufficient service of process and failure to state a claim.  Defendant Shanghai Shenzhuang also

moved to dismiss the claims against it for lack of personal jurisdiction. For the reasons set forth below, the claims against Ge Li are dismissed for failure to state a claim. The motion to dismiss is otherwise denied and the claims against Shanghai Shenzhuang may proceed.

## BACKGROUND

Plaintiffs Chen Lin, Jianqun Zhang, Di Pan, Bo Liu, and Jialiang Pan allege that they used to work for The Dolar Shop Restaurant Group, LLC, which owns and operates a restaurant in Flushing, New York ("the Flushing Dolar Shop"). *See* Am. Compl. ¶¶ 8-19. Plaintiffs filed suit in 2016 against The Dolar Shop Restaurant Group, as well as against Yu Zhang, Tzu Cheung, Xin Feng Wang, and Ying Nan Qi—individuals whom plaintiffs claim own and operate the Flushing Dolar Shop. Plaintiffs alleged that defendants committed wages and hours violations under the Fair Labor Standards Act and New York Labor Law. *See generally* Compl.

In late 2018, plaintiffs moved to amend the complaint to add several new defendants, including Shanghai Shenzhuang The Dolar Shop Catering Management Co., Ltd., a Chinese corporation, and Ge Li, a resident of China and the chief executive officer of Shanghai Shenzhuang. *See generally* Pls.' Mot. to Compel and Am. Compl. (Dkt. #46); Pls.' Suppl. Mot. to Am. Compl. (Dkt. #48); *see also* Am. Compl. ¶¶ 20-29, 36-38.

According to the amended complaint, Shanghai Shenzhuang is located and organized in China but "operates" and is "the management corporation" of the Flushing Dolar Shop. Am. Compl. ¶¶ 24, 26. Plaintiffs allege that Shanghai Shenzhuang "entered into a joint venture agreement" with defendant Yu Zhang, an individual owner and operator of the Flushing Dolar Shop. *Id.* ¶ 27. Under the joint venture agreement, Shanghai Shenzhuang retained majority ownership of the Flushing Dolar Shop and "was to be responsible for" several aspects of the Flushing Dolar Shop's business, including "providing technical and management staff,"

2

"determining the core management techniques of, among other things, operation and human resources," "providing training handbooks for use by the management," and "determining the design, furnishing, and style" of the Flushing Dolar Shop. *Id.* ¶¶ 27-28.  Plaintiffs allege that their employment at the Flushing Dolar Shop was "directly essential to the businesses operated by" Shanghai Shenzhuang. *Id.* ¶ 29.

In briefing their motion to dismiss, plaintiffs submitted a translated copy of the joint venture agreement to the court.  *See* Pls.' Decl. in Opp'n to Mot. to Dismiss, Ex. 2 ("JVA") (Dkt. #84-2).   The agreement appears to establish a "joint venture company" between Shanghai Shenzhuang and Yu Zhang, a named defendant and alleged owner and operator of the Flushing Dolar Shop, related to a "restaurant opening."  *See id.* at 1.  It provides that the parties will share dividends from the joint venture, requires Yu Zhang to "report all situations to" Shanghai Shenzhuang and "fill out [a] financial report form" provided by Shanghai Shenzhuang, requires Shanghai Shenzhuang to invest money in the joint venture through a bank account in New York, and gives Shanghai Shenzhuang responsibility for appointing a principal to "be responsible for managing the new joint company . . . following the standard management system" of Shanghai Shenzhuang.  *Id.* at 1, 2, 5.  The agreement also provides that any disputes arising from the agreement that cannot be resolved privately "should be submitted to the local court in the U.S.A." *Id.* at 7.

As for defendant Ge Li, the amended complaint alleges that Mr. Li is "a 22% shareholder and Chief Executive Officer" of Shanghai Shenzhuang.  Am. Compl. ¶ 36.  It further alleges that he is "responsible for implementing" Shanghai Shenzhuang's part of the joint venture agreement. *Id.* ¶¶ 37-38.  The complaint alleges that Mr. Li's responsibilities under the agreement included "appointing and terminating managers to train and supervise the day-to-day managers of [the

Flushing] Dolar Shop," and that he "exercises sufficient controls" over the Flushing Dolar Shop's operations to be considered plaintiffs' employer under FLSA and NYLL. *Ibid*.

The defendants named in the first complaint (which did not include Mr. Li or Shanghai Shenzhuang) opposed plaintiffs' motion to amend the complaint, arguing that amendment would be futile because the amended complaint failed to adequately allege that the defendants, including Mr. Li and Shanghai Shenzhuang, were plaintiffs' "employers" within the meaning of FLSA. *See* Defs.' Response in Opp'n to Mot. to Am. at 3-4 (Dkt. #49). In an oral ruling, Magistrate Judge Levy rejected this argument and granted plaintiffs' motion to amend. *See* Tr. of Judge Levy's Apr. 11, 2019 Oral Ruling on Mot. to Am. at 13:1-10 ("Oral Ruling Tr.") (Dkt. #82).

On April 11, 2019, plaintiffs filed the now-operative amended complaint adding defendants Shanghai Shenzhuang and Ge Li. *See generally* Am. Compl. The amended complaint asserts ten counts of wages and hours violations under FLSA and NYLL. *See ibid*. Under Rule 4(m), plaintiffs were required to serve all defendants within 90 days, by July 10, 2019. See Fed. R. Civ. P. 4(m). On May 16, 2019, plaintiffs filed a motion seeking to serve Mr. Li and Shanghai Shenzhuang under Rule 4(f), which sets out alternative methods of service for individuals located in foreign countries. *See* Mot. for Alternative Service (Dkt. #54); Suppl. Letter in Supp. of Pls.' Mot. for Alternative Service (Dkt. #55). Specifically, plaintiffs sought to serve those defendants using email under Rule 4(f)(3), which permits service of a defendant in a foreign country "by other means not prohibited by international agreement, as the court orders."

On September 13, 2019, Judge Levy denied plaintiffs' motion to serve Mr. Li and Shanghai Shenzhuang by email. *See generally* Judge Levy's Sep. 13, 2019 Order (Dkt. #59). Judge Levy did not foreclose service by a means other than email under Rule 4(f), and he stated that "[i]f

[plaintiffs] wish to proceed with their claims against" Mr. Li and Shanghai Shenzhuang, they "should begin the process of serving [those] defendants through the Hague Convention." *Id.* at 6.

Plaintiffs never served defendants abroad, however.  Instead, on December 6, 2019, they served Mr. Li, both individually and in his capacity as an agent for Shanghai Shenzhuang, through personal delivery at a hotel in Flushing, New York.  *See* Certificates of Service (Dkts. #66, #67). According to plaintiffs' brief in opposition to dismissal, while their efforts to serve Mr. Li and Shanghai Shenzhuang abroad were underway, they learned that Mr. Li would be in New York and so chose to serve him by personal delivery.  Pls.' Mem. of L. in Opp'n to Mot. to Dismiss at 9 ("Pls.' Br.") (Dkt. #85).  Plaintiffs did not, however, provide an affidavit attesting to these events.

Mr. Li and Shanghai Shenzhuang now seek to dismiss all claims against them for untimely service of process under Rule 12(b)(5) and for failure to state a claim under Rule 12(b)(6). Shanghai Shenzhuang also moves to be dismissed from the case under Rule 12(b)(2) based on a lack of personal jurisdiction.

## DISCUSSION

Defendants' motion to dismiss for insufficient service of process and for lack of personal jurisdiction is denied.  The motion to dismiss for failure to state a claim is granted with respect to defendant Ge Li and denied with respect to defendant Shanghai Shenzhuang.

## I.   Motion to Dismiss for Insufficient Service of Process

Defendants first move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(5).  That rule "provides for dismissal of an action if service of process was not timely effected in accordance with Federal Rule of Civil Procedure 4(m)."  *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016).  Under Rule 4(m), in turn, "[i]f a defendant is not served within 90 days after the complaint is filed," the court "must dismiss the action without

prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff shows "good cause for the failure," then "the court must extend the time for service for an appropriate period." *Ibid.* In determining whether good cause exists, courts consider "(1) the diligence and reasonableness of the plaintiff's efforts to serve, and (2) prejudice to the defendants from the delay." *Tolchin v. Cnty. of Nassau*, 322 F. Supp. 3d 307, 311 (E.D.N.Y. 2018), *aff'd*, 768 F. App'x 60 (2d Cir. 2019).

Plaintiffs did not serve Mr. Li or Shanghai Shenzhuang within the 90 days allotted under Rule 4(m), and they have not shown good cause for their failure. Plaintiffs suggest that they had good cause because they had been attempting to serve the foreign defendants under the Hague Convention procedures discussed in Rule 4(f). *See* Pls.' Br. at 9. The 90-day timeline for service under Rule 4(m) "does not apply to service in a foreign country under Rule 4(f)." Fed. R. Civ. P. 4(m). Courts in this circuit instead use a "flexible due diligence standard" to determine whether service in a foreign country under Rule 4(f) was timely. *Aqua Shield, Inc. v. Inter Pool Cover Team*, No. 5-CV-4880, 2007 WL 4326793, at *2 (E.D.N.Y. Dec. 7, 2007) (collecting cases). Even though plaintiffs here did not ultimately serve the foreign defendants under Rule 4(f), reasonable and diligent attempts to do so seem likely to suffice as good cause for belated domestic service. But plaintiffs have not submitted affidavits or other evidence showing that their attempts to achieve such service were reasonable and diligent. Without any such evidence, plaintiffs have not established good cause for the belated service they accomplished in this case.

Nevertheless, in the absence of good cause, courts have discretion to extend the time for service if there is "some colorable excuse for neglect." *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007); *see Henderson v. United States*, 517 U.S. 654, 662 (1996) (observing that courts have discretion to extend the time for service "even if there is no good cause shown"). If a

colorable excuse is offered, "courts in this Circuit generally consider four factors: (1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant[s] had actual notice of the claims asserted in the complaint; (3) whether defendant[s] attempted to conceal the defect in service; and (4) whether defendant[s] would be prejudiced by extending plaintiff's time for service." *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013) (citation omitted); *see Zapata*, 502 F.3d at 197. Extensions may be granted *nunc pro tunc*. *See, e.g.*, *Astoria Gen. Contracting Corp. v. Office of the Comptroller*, No. 15-CV-1782, 2016 WL 3144059, at *5 (S.D.N.Y. Apr. 12, 2016); *Gesualdi v. Reid*, No. 14-CV-4212, 2015 WL 5476056, at *3-*4 (E.D.N.Y. Sept. 16, 2015).

Applying that framework, I exercise my discretion to extend the time to serve Mr. Li and Shanghai Shenzhuang, *nunc pro tunc*, to December 6, 2019—the date on which service was completed. As noted above, plaintiffs have not shown that their attempts at service abroad were sufficiently reasonable and diligent as to establish good cause for their delay. But those efforts— which included plaintiffs' prompt motion to serve Mr. Li and Shanghai Shenzhuang by email— provide at least a "colorable excuse," *Mares*, 627 F. App'x at 24, for their untimeliness. *Cf. Shuford*, No. 17-CV-6349, 2020 WL 3129262, at *2 (granting an extension for service in the absence of good cause, in part because "[w]hile Plaintiff's efforts [to serve] were far from extensive, it cannot be said that he did nothing to attempt service"). Moreover, plaintiffs' delay in achieving service amounted to months, not years. *Cf. Consiglio v. Ward Trucking, LLC*, No. 11-CV-6100, 2012 WL 4498895, at *2 (E.D.N.Y. Sept. 27, 2012).

Considering those facts alongside the factors commonly weighed in deciding whether to grant a discretionary extension, I find that such an extension is warranted here. Of particular significance, under the first of the factors described in *Vaher*, courts are more likely to grant an

extension when "the applicable statute of limitations would bar the refiled action," Advisory Committee Notes to Rule 4(m); *see Vaher*, 916 F. Supp. 2d at 420. And that is so for at least some of plaintiffs' claims. Plaintiffs were employed at the Flushing Dolar Shop until March or April 2016, *see* Am. Compl. ¶¶ 75, 89, 104, 115, 128, and FLSA imposes a statute of limitations of two or three years after a violation accrues, *see* 29 U.S.C. § 255(a); *see also* Oral Ruling Tr. at 11:14-12:3. Equally significant, as relevant to the fourth factor described in *Vaher*, neither Mr. Li nor Shanghai Shenzhuang has asserted any prejudice from the passage of time due to plaintiffs' delay in service. *See* Defs.' Mem. of L. in Supp. of Mot. to Dismiss at 7-8 ("Defs.' Br.") (Dkt. #83-1); Defs.' Reply Br. in Supp. of Mot. to Dismiss at 1 ("Defs.' Reply") (Dkt. #86); *cf. Consiglio*, No. 11-CV-6100, 2012 WL 4498895, at *2 (finding that this factor supported plaintiffs when defendants failed to identify prejudice beyond the need to defend a suit that would otherwise have been time-barred).

The remaining *Vaher* factors weigh less heavily here. The record regarding defendants' prior notice of the suit is unclear: Plaintiffs have not offered proof that Mr. Li or Shanghai Shenzhuang had actual notice of this lawsuit before service, but neither of the foreign defendants has argued that they were unaware of the lawsuit, either. *See* Defs.' Reply at 4 (arguing that whether they had prior actual notice is "irrelevant"). And there is no indication that defendant has attempted to conceal any defect in service. *See, e.g.*, *Jimenez v. U.S. Bank Nat'l Ass'n*, No. 17-CV-33, 2018 WL 4954097, at *3 (E.D.N.Y. Oct. 11, 2018) ("[T]he third factor does not bear on the Court's decision, because there is no allegation that US Bank attempted to conceal any defect in service in this case."); *Etheredge-Brown v. Am. Media, Inc.*, No. 13-CV-1982, 2015 WL 4877298, at *4 (S.D.N.Y. Aug. 14, 2015) (same). In sum, taking into account all the considerations

8

above, I grant plaintiffs a discretionary extension of the service deadline, *nunc pro tunc*, until December 6, 2019.

## II.   Motion to Dismiss for Lack of Personal Jurisdiction as to Shanghai Shenzhuang

Defendant Shanghai Shenzhuang has moved to dismiss the claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  When a defendant makes such a motion, plaintiffs bear the burden of showing that the court has personal jurisdiction over the defendant.  *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).  Before discovery has taken place, the court "may consider materials outside the pleadings, including affidavits and other written materials," *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)), and "a plaintiff is required only to make a *prima facie* showing by pleadings and affidavits that jurisdiction exists," *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).  Under that standard, "a complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are 'legally sufficient allegations of jurisdiction.'"  *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quotations omitted).  In this posture, the court must construe all pleadings and affidavits in the light most favorable to the plaintiffs and resolve all doubts in their favor.  *See Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).

A federal court generally may exercise personal jurisdiction over a foreign corporation only if doing so would be permissible under the law of the State in which the federal court is located.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.").  Whether personal

jurisdiction exists therefore depends on, first, whether the New York long-arm statute provides a basis for jurisdiction, and second, whether New York would be permitted to exercise personal jurisdiction under the Due Process Clause of the Fourteenth Amendment. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

### A.  New York's Long-Arm Statute

Plaintiffs have adequately pleaded specific jurisdiction over Shanghai Shenzhuang under New York's long-arm statute.  They invoke Section 302(a)(1) of New York's Civil Practice Law, which provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  To establish such jurisdiction over a foreign defendant, "two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (quotations omitted).

Plaintiffs meet the first requirement because they have adequately pleaded that Shanghai Shenzhuang transacted business within New York.  To show that a defendant "transacted business" in New York, plaintiffs must show that the defendant "purposely availed [itself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104-05 (2d Cir. 2006).  Courts consider "the totality of circumstances" in determining whether this requirement is met. *Ibid.*  Under Section 302(a)(1), "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Deutsche*

*Bank Sec., Inc. v. Montana Bd. of Investments*, 850 N.E.2d 1140, 1142 (N.Y. 2006); *see Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).  Factors bearing on the analysis "includ[e] (i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires the defendant to send notices and payments into the forum state."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004); *see AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1*, 675 F. Supp. 2d 354, 361 (S.D.N.Y. 2009).

Plaintiffs have adequately pleaded that Shanghai Shenzhuang transacted business in New York for purposes of Section 302(a)(1) under these principles.  As to the first factor, Shanghai Shenzhuang executed a joint venture agreement with defendant Yu Zhang concerning the operation of a restaurant in New York, over an apparently indefinite period.  *See* JVA at 1, 2; Am. Compl. ¶¶ 30-32; *cf. ICO Servs., Ltd. v. Coinme, Inc.*, No. 18-CV-4276, 2018 WL 6605854, at *3 (S.D.N.Y. Dec. 17, 2018) (finding no ongoing agreement from "a single short-term contract with a term of less than three months").  As to the second factor, while it is not clear where the joint venture agreement was executed, plaintiffs' allegations raise a reasonable inference that Shanghai Shenzhuang has sent representatives to New York in connection with the joint venture agreement.  *See* Am. Compl. ¶¶ 48, 58, 60; JVA at 4-5.  The parties' choice of law, as relevant to the third factor, is less clear, although the joint venture agreement indicates that "any dispute between the parties" regarding the agreement "should be submitted to the local court in U.S.A."  JVA at 2, 7-8.  Even if this factor does not favor plaintiffs, however, "this fact is not dispositive."  *Sunny Farms*

11

*Landfill LLC v. Rail Sols., LLC*, No. 15-CV-5988, 2017 WL 4011137, at \*6 (E.D.N.Y. Aug. 24, 2017), *report and recommendation adopted*, No. 15-CV-5988, 2017 WL 4011242 (E.D.N.Y. Sept. 11, 2017); *see Sunward Elecs., Inc.*, 362 F.3d at 23.  Finally, the fourth factor favors plaintiffs because the joint venture agreement appears to require Shanghai Shenzhuang to send payments and training materials to New York.  *See* JVA at 1, 3-5.  Taking these factors together, plaintiffs have adequately pleaded that Shanghai Shenzhuang "transacted business" in New York.

Plaintiffs have also adequately pleaded that their claims "arise out of" Shanghai Shenzhuang's contacts with New York.  The "arising out of" requirement of Section 302(a), requires "a substantial nexus" between the defendant's "transaction of business" in New York and the plaintiffs' claims.  *D.H. Blair & Co.*, 462 F.3d at 105.  Here, plaintiffs allege that defendant Shanghai Shenzhuang "dispatched" to New York the managers who were responsible for the FLSA and NYLL violations alleged in this case.  Am. Compl. ¶¶ 48, 58, 60.  They also allege that Shanghai Shenzhuang had responsibility for "determining [the Flushing Dolar Shop's] core management techniques," *id.* ¶ 18, that it was to be "involve[d] in the operation and management, and major decision[s] of the joint company" operating the Flushing Dolar Shop, JVA at 2, and that it was to provide the Flushing Dolar Shop with handbooks for training, human resources management, financial management, and operations, *see id.* at 3-4; Am. Compl. ¶ 18.  Viewing plaintiffs' allegations as a whole and in the light most favorable to them, s*ee Penguin Grp.*, 609 F.3d at 34, the pleadings give rise to the plausible inference that plaintiffs' FLSA and NYLL claims arise out of Shanghai Shenzhuang's involvement in the operation of the Flushing Dolar Shop in New York.

## B.  Due Process Considerations

New York would also be permitted to exercise personal jurisdiction over Shanghai Shenzhuang under the Due Process Clause of the Fourteenth Amendment, as required for this court to exercise jurisdiction under Rule 4(k)(1)(A).  Under the Due Process Clause, a State may exercise personal jurisdiction over a foreign company only if the company has such "minimum contacts" with the State that the lawsuit does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  A defendant has the requisite minimum contacts with a State so long as it "purposefully availed itself of the privilege of conducting activities" within that State, "thus invoking the benefits and protections of its laws, such that [the defendant] should reasonably anticipate being haled into court there."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242-43 (2d Cir. 2007) (quotations omitted); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (holding that the Due Process Clause allows a State to exercise specific jurisdiction over a controversy that "is related to or arises out of a defendant's contacts with the forum") (quotations omitted).  In New York, "except in rare cases," the questions of whether the long-arm statute permits personal jurisdiction and whether personal jurisdiction comports with due process "yield the same result."  *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 273 (S.D.N.Y. 2019); *see Eades v. Kennedy*, *PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).  Here, plaintiffs' allegations supporting personal jurisdiction under Section 302(a)(1) are also adequate to plead that Shanghai Shenzhuang had sufficient minimum contacts with New York to allow suit there under the Due Process Clause.  These include the allegations described above regarding Shanghai Shenzhuang's involvement in the operation, staffing, and employment policies of the Flushing Dolar Shop, where the alleged

13

FLSA and NYLL violations took place.   Am. Compl. ¶¶ 17-19, 24-29; *see generally* JVA. Accordingly, the motion to dismiss based on a lack of personal jurisdiction is denied.

## III.   Motion to Dismiss for Failure to State a Claim

Defendants next move to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6).  They argue that the amended complaint does not adequately plead that either Ge Li or Shanghai Shenzhuang qualified as plaintiffs' "employer" under the FLSA.

Rule 12(b)(6) directs a court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The facial "plausibility standard is not akin to a 'probability requirement,'" but it requires a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotations omitted).  In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all facts alleged in the complaint as true. *Iqbal*, 556 U.S. at 678.  The Court, however, is not obligated to adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid.*

Magistrate Judge Levy previously determined that the amended complaint adequately alleged that Ge Li and Shanghai Shenzhuang were plaintiffs' employers for purposes of the FLSA, in the course of granting plaintiffs' motion to amend the complaint. *See generally* Oral Ruling Tr. But neither Ge Li nor Shanghai Shenzhuang was a party when that determination was made.  They therefore had no opportunity to argue the point.  I decline to apply the law-of-the-case doctrine in

these circumstances.  Considering the question anew, I conclude that plaintiffs have failed to adequately plead that Ge Li was an "employer" within the meaning of the FLSA, but that they have adequately pleaded Shanghai Shenzhuang's employer status.

**A.  Ge Li**

The amended complaint fails to adequately plead that Ge Li was plaintiffs' employer.  The Fair Labor Standards Act defines "employer"—unhelpfully—as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The "overarching concern is whether the alleged employer possessed the power to control the workers in question." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  An allegation that a defendant "is an owner or officer of a company . . . is insufficient" by itself, unless the defendant has "control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013).

Courts assess whether defendants have the requisite control on "a case-by-case basis," based on "review of the totality of the circumstances." *Id.* at 104.  In assessing whether an individual owner or manager qualifies as a plaintiff's employer, courts commonly employ an "economic reality test" set out in *Carter v. Dutchess Community Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).  That is also the test on which the parties have focused.  *See* Pls.' Br. at 19; Defs.' Br. at 17-18.  That test treats as material whether the employer (1) "had the power to hire and fire" employees, (2) "supervised and controlled employee work schedules or conditions of employment," (3) "determined the rate and method of payment," and (4) "maintained employment records." *Irizarry*, 722 F.3d at 104 (quoting *Carter*, 735 F.2d at 12).  These factors are not exclusive.  *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003).

The three sentences regarding Ge Li in the amended complaint do not adequately allege that Mr. Li was plaintiffs' employer. Plaintiffs do plead facts in support of the first *Carter* factor. They allege that Mr. Li was "responsible for . . . appointing and terminating managers to train and supervise the day-to-day managers of" the Flushing Dolar Shop. Am. Compl. ¶ 37. That hiring-and-firing authority weighs in favor of finding Mr. Li to be plaintiffs' employer—even if Mr. Li's hiring-and-firing authority did not pertain to plaintiffs themselves. *See Herman*, 172 F.3d at 140. But plaintiffs' allegation that Mr. Li had hiring and firing authority over certain managers is not sufficient to establish that Mr. Li is plaintiffs' FLSA "employer." *Irizarry*, 722 F.3d at 116 (indicating that when only two of four *Carter* factors were satisfied, the determination that owner-president who exerted "functional control over the enterprise as a whole" was FLSA employer was a "close case"); *see, e.g.*, *Kaplan v. Wings of Hope Residence, Inc.*, 2020 WL 616630, at *8 (E.D.N.Y. Feb. 7, 2020) (plaintiffs failed to state a claim where they alleged some hiring and firing authority but no other indicia of worker control).

And plaintiffs do not allege facts supporting any of the other *Carter* factors. The closest they come is the statement that Mr. Li was "responsible for implementing" Shanghai Shenzhuang's part of the joint operating agreement concerning the Flushing Dolar Shop, Am. Compl. ¶ 37, coupled with the allegation that the joint venture agreement gave Shanghai Shenzhuang responsibility "for determining the core management techniques of . . . operations and human resources" for the shop, *id*. ¶ 28. But plaintiffs' suggestion that Mr. Li had some responsibility for "core management techniques" is too vague and inscrutable to support a finding that Mr. Li satisfied any of the *Carter* factors or otherwise exercised significant control over employment and working conditions. Courts consistently hold that complaints are too general to survive a motion under Rule 12(b)(6) when they merely allege in general terms that a defendant performed the

16

functions described as relevant in *Carter*.  *See, e.g.*, *Peng Bai v. Fu Xing Zhuo*, 2014 WL 2645119, at *4 (E.D.N.Y. June 13, 2014) ("[A]llegations that [defendant] had the power to hire, fire, set wages, set work conditions, and maintain employment records" were "conclusory and inadequate to establish that [defendant] was an employer."); *Bravo v. Established Burger One, LLC*, 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 8, 2013) (dismissing claims when plaintiffs simply alleged "the elements of the 'economic reality test'" with "no specific facts" because "mere boilerplate allegations that an individual meets the various prongs of the economic reality test are insufficient to survive a motion to dismiss") (quotations omitted); *see also Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 588-89 (S.D.N.Y. 2020); *Chui-Fan Kwan v. Sahara Dreams Co. II Inc.*, No. 17-CV-4058, 2018 WL 6655607, at *4 (S.D.N.Y. Dec. 19, 2018); *Serrano v. I. Hardware Distrib., Inc.*, No. 14-CV-2488, 2015 WL 4528170, at *2 (S.D.N.Y. July 27, 2015).  Plaintiffs' suggestion that Mr. Li was responsible for implementing "core management techniques" is even vaguer than the statements invoking the *Carter* factors that courts have consistently held inadequate.

The complaint's other statement about Mr. Li—that he "exercises sufficient controls of the [Flushing] Dolar Shop's day-to-day operations to be considered an employer of Plaintiffs," Am. Compl. ¶ 38—is even more bereft of factual content.  That statement is a "legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.  It is therefore insufficient to satisfy plaintiffs' pleading burden under Rule 12(b)(6).  *Ibid.*; *see, e.g.*, *Yongfu Yang v. An Ju Home, Inc.*, No. 19-CV-5616, 2020 WL 3510683, at *4 (S.D.N.Y. June 29, 2020); *Apolinar v. R.J. 49 REST., LLC*, No. 15-CV-8655, 2016 WL 2903278, at *4-*5 (S.D.N.Y. May 18, 2016).  And while the factors discussed in *Carter* are not a "rigid four-part test" that must be satisfied in order for a defendant to qualify as an employer, *Zheng*, 355 F.3d at 69, plaintiffs' vague description of Mr. Li's role

does not afford a basis beyond the *Carter* factors for finding him to be an employer. Plaintiffs have thus failed to adequately allege that Mr. Li was their "employer" under FLSA.

## B. Shanghai Shenzhuang

In contrast, plaintiffs adequately allege that Shanghai Shenzhuang is their employer, based on the theory that Shanghai Shenzhuang and the Flushing Dolar Shop are a single integrated enterprise. To determine if a parent company is an employer under FLSA, courts in this circuit often evaluate whether the parent company and related entity "are actually part of a single integrated enterprise." *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (collecting cases); *see Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342, 2019 WL 1585163, at *4 (S.D.N.Y. Apr. 12, 2019); *Mendez v. Pure Foods Mgmt. Grp., Inc.*, No. 14-CV-1515, 2016 WL 183473, at *4 (D. Conn. Jan. 14, 2016). To do so, courts examine whether the companies have (i) "interrelation of operations," (ii) "common management," (iii) "centralized control of labor relations," and (iv) "common ownership or financial control." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014); *see In re Domino's Pizza Inc.*, 2018 WL 1587593, at *2 (S.D.N.Y. Mar. 27, 2018) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). While "there is some disagreement among district courts" within the Second Circuit "with respect to whether the single-integrated-enterprise theory . . . is appropriate in the FLSA context," *Juarez*, 29 F. Supp. 3d at 368 n.3, neither party has disputed its applicability in this case, *see* Pls.' Br. at 20-23; Defs.' Reply at 7-10.

Plaintiffs have adequately alleged that Shanghai Shenzhuang and the Flushing Dolar Shop are a single integrated enterprise under this test. First, plaintiffs allege facts that provide evidence of interrelation of operations. These include that Shanghai Shenzhuang was responsible under a joint venture agreement for the Flushing Dolar Shop's "design, furnishing, and style," and that

18

Shanghai Shenzhuang provided training handbooks for the shop's management in such areas as "the brand identity and corporate culture of Dolar Shop and the technical skills and processes of [store managers'] positions."  Am. Compl. ¶¶ 17-18, 27-28; *cf. Khereed v. West 12th Street Rest. Grp., LLC*, 2016 WL 590233, at *4 (S.D.N.Y. 2016) (noting that "common decor, name, menu, and marketing" as well as "the distribution of common employee guidelines and procedures" are "facts that go to the existence of a single, integrated enterprise").  Second, the amended complaint sets forth evidence of common management and centralized control of labor operations.  These include the allegations that Shanghai Shenzhuang was charged with providing technical and management staff to the Flushing Dolar Shop and that it "dispatched" managers Ying Nan Qi, Xin Feng Wang, and Xiang Chao Liu to the store.  Am. Compl. ¶¶ 48, 58, 60.  Finally, the amended complaint alleges common ownership or financial control: it states that Shanghai Shenzhuang has a 51% ownership interest in the Dolar Shop Restaurant Group, which operates the Flushing Dolar Shop.  *Id.* ¶ 27.  As Judge Levy concluded, *see* Oral Ruling Tr. at 6:13-7:20, plaintiffs have adequately pleaded an integrated-enterprise theory through these allegations.  Because the amended complaint adequately alleges that Shanghai Shenzhuang is plaintiffs' employer under FLSA, the motion to dismiss that defendant for failure to state a claim under Rule 12(b)(6) is denied.

## IV.   Leave to Amend

In their brief in opposition to dismissal, plaintiffs include one sentence requesting leave to amend the complaint in the event the motion to dismiss is granted.  *See* Pls.' Br. at 24.  A motion to amend a complaint under Rule 15(a) must set forth the substance of the proposed amendment and the grounds supporting the application.  *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 275 (2d Cir. 2006); *Chechele v. Scheetz*, 819 F. Supp. 2d 342, 350-51 (S.D.N.Y. 2011), *aff'd*,

466 F. App'x 39 (2d Cir. 2012).  Here, plaintiffs have not explained how a second amended complaint would cure their deficiencies in pleading.  Accordingly, plaintiffs' request for leave to amend the complaint is denied without prejudice.

## CONCLUSION

Defendants' motion to dismiss the amended complaint for insufficient process is denied, as is Shanghai Shenzhuang's motion to dismiss based on the absence of personal jurisdiction.  The motion to dismiss for failure to state a claim is granted as to Ge Li and denied as to Shanghai Shenzhuang.   Plaintiffs' request for leave to amend the complaint is denied without prejudice.

SO ORDERED.


 */s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge


Dated: February 22, 2021
        Brooklyn, New York