UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CHEN LIN, JIANQUN ZHANG, DI PAN,
BO LIU, and JIALIANG PAN,

                 Plaintiffs,

         v.

THE DOLAR SHOP RESTAURANT
GROUP, LLC, *d/b/a Dolar Shop*;
SHANGHAI SHENZHUANG THE
DOLAR SHOP CATERING
MANAGEMENT CO., LTD.;YU ZHANG,
*a/k/a Yu Cheung a/k/a Suzie Cheung*; TZU
CHEUNG, *a/k/a Tzu Yen Cheung a/k/a Ken
Cheung*; GE LI, *a/k/a Jerry Li*; QIN BO
LIANG, *a/k/a Alvin Liang*; ZHONG BAO
YUAN; QIN CHUN GAO; YING NAN QI,
*a/k/a Frank Qi*; XIN FENG WANG, *a/k/a
Ruby Wang*; and XIANG CHAO LIU,

                 Defendants.

-------------------------------------------------------x

**MEMORANDUM AND ORDER**
16-CV-2474 (RPK) (TAM)

RACHEL P. KOVNER, United States District Judge:

    Two sets of defendants in this wage-and-hour litigation move for summary judgment. Defendants The Dolar Shop Restaurant Group, LLC ("The Dolar Shop") and Ying Nan Qi, a/k/a Frank Qi ("Frank Qi") move for summary judgment on plaintiffs' claims for failure to provide wage notices and wage statements in violation of Sections 195(1) and 195(3) of the New York Labor Law ("NYLL"); failure to provide meal periods in violation of Section 162 of the NYLL; violation of recordkeeping requirements at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1; violation of New York's deceptive trade practices statute, N.Y. Gen. Bus. Law § 349; and filing of fraudulent information returns in violation of 26 U.S.C. § 7434. Defendant Shanghai

1

Shenzhuang The Dolar Shop Catering Management Co., Ltd. ("Shanghai Shenzhuang") moves for summary judgment on all plaintiffs' claims against it on the grounds that it did not constitute plaintiffs' "employer" within the meaning of the Fair Labor Standards Act and the NYLL.  For the reasons that follow, both motions are granted.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and relevant portions of the record and are undisputed unless otherwise noted.

a. Plaintiffs were employed as waiters, waitresses, or kitchen helpers at a hot-pot restaurant operated by defendant The Dolar Shop in Flushing, New York.  The Dolar Shop Rule 56.1 Statement ¶¶ 1–2 (Dkt. #140-1).

The Dolar Shop was created as a joint venture between defendant Shanghai Shenzhuang, a foreign corporation based in China, and defendant Yu Zhang.  At inception, Shanghai Shenzhuang owned 51% of the equity and Zhang owned 49%.  Pls.' Rule 56.1 Counterstatement ¶¶ 3–4 (Dkt. #144-1); Joint Venture Agreement 1 (ECF pagination) (Dkt. #84-2).  Some time later, Zhang transferred 34% of her interest in The Dolar Shop to her husband, Yu Cheung.  Pls.' Rule 56.1 Counterstatement ¶ 5.  The two companies worked in separate facilities, filed taxes separately, and maintained separate bank accounts.  Ge Li Decl. ¶¶ 5–17 (Dkt. #142-2).

According to the translated copy of the joint venture agreement between Shanghai Shenzhuang and Zhang, Shanghai Shenzhuang was responsible for providing "long term technical support and management service" to The Dolar Shop.  Joint Venture Agreement 3.  This included such responsibilities as determining the general design of the shop, appointing a manager to impart "the management experience of core techniques" like operations and human resources, and providing standard handbooks for operating the restaurant and the business.  *Id.* at 3–4.  Zhang, on

2

the other hand, was responsible for setting up The Dolar Shop in the United States—including ensuring compliance with U.S. laws—and the "daily management" of the restaurant.  *Id.* at 4–5. The Agreement stated that Zhang would manage the "majority of employees' hiring and training." *Id.* at 5.   Zhang signed all employees' paychecks until December 2017.   Pls.' Rule 56.1 Counterstatement ¶ 15.

To help Zhang operate the restaurant, Shanghai Shenzhuang transferred managerial staff from China to New York.  Frank Qi Dep. Tr. 14:6–12, 16:22–17:3, 19:3–5 (Dkt. #144-2).   The joint venture, The Dolar Shop, was "responsible for the cost of" the transferred employees.  Joint Venture Agreement 3.  Two such managers, defendants Frank Qi and Ruby Wang, handled The Dolar Shop's day-to-day operations, hired and fired restaurant staff, and set employee wages.  Pls.' Opp'n 5 (Dkt. #144) (citing Frank Qi Dep. Tr. 16:16–19:11, 58:5–15, and Ken Cheung Dep. Tr. 16:13–19 (Dkt. #144-3)).  A joint bookkeeper, Poe Luan, managed The Dolar Shop's bank accounts alongside Zhang and Cheung.  Ken Cheung Dep. Tr. 24:12–25:25.

The parties dispute whether the transferred workers were also Shanghai Shenzhuang employees during this time.  *See* Pls.' Rule 56.1 Counterstatement ¶¶ 8, 11, 13.  Ken Cheung, the joint venture's "managing director," Ge Li Dep. Tr. 22:12–15 (Dkt. #144-4), testified that Qi made the "final call" on personnel decisions—subject to review only if Cheung appealed to Ge Li, Shanghai Shenzhuang's executive director, Ken Cheung Dep. Tr. 29:2–30:15.  But the parties agree that the workers were employees of The Dolar Shop, were paid by The Dolar Shop, and "did not receive any payment from Shanghai."  Frank Qi Decl. ¶¶ 1–2 (Dkt. #142-4); Pls.' Rule 56.1 Counterstatement ¶¶ 9, 11, 13; Yu Zhang 2021 Dep. Tr. 54:17–21 (Dkt. #142-15); Defs.' Frank Qi Dep. Tr. 62:22–23 (Dkt. #142-16).

3

Plaintiffs allege that they were never provided wage notices or wage statements during their employment as required by Sections 195(1) and 195(3) of the NYLL.  *See* Pls.' Rule 56.1 Counterstatement ¶¶ 23, 26.  One plaintiff, Jianqun Zhang, did receive a W-2 from The Dolar Shop for the 2016 tax year.  But she alleges that the information return "underreported [her] wages and tips" by approximately $8,100.  Aff. of Jianqun Zhang ¶ 31 (Dkt. #144-7).

b.   Plaintiffs filed this lawsuit in 2016.  Their amended complaint brings claims for minimum- and overtime-wage violations under the FLSA and NYLL, violations of the NYLL's spread-of-time pay and meal period provisions, violations of the NYLL's recordkeeping requirements, violations of the NYLL's wage-notice and wage-statement provisions, filing fraudulent information returns under 26 U.S.C. § 7434, and violations of New York's deceptive trade practices statute, N.Y. Gen. Bus. Law § 349.  Am. Compl. ¶¶ 147–98 (Dkt. #50).

Two sets of defendants have moved for summary judgment.  Defendants The Dolar Shop and Frank Qi move for summary judgment on the claims alleging failure to provide wage notices and wage statements in violation of the NYLL, failure to provide meal periods in violation the NYLL, violation of the NYLL's recordkeeping requirements, violation of New York's deceptive trade practices statute, and filing of fraudulent information returns.  Defendant Shanghai Shenzhuang moves for summary judgment on all of plaintiffs' claims against it.

### LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted).  "A fact is material if it might affect the outcome of the suit under the governing law."  *Ibid.* (citation

4

omitted).  In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-movant.  *See ibid.*  A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## DISCUSSION

The summary judgment motions are granted.

### I.    The Dolar Shop and Frank Qi's Motion

The Dolar Shop and Frank Qi move for summary judgment on plaintiffs' NYLL wage-notice and wage-statement claims; plaintiffs' claims for meal period and recordkeeping violations under the NYLL and for deceptive trade practices under New York's general business law; and plaintiffs' claim for the filing of fraudulent information returns in violation of 26 U.S.C. § 7434. The motion is granted.

#### A.    Wage-Notice and Wage-Statement Claims

The Dolar Shop and Frank Qi are entitled to summary judgment on plaintiffs' NYLL wage-notice and wage-statement claims because plaintiffs lack standing to pursue these claims.

The federal judicial power is limited to the adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2.  "'Under Article III, a case or controversy can exist only if a plaintiff has standing to sue,' meaning a personal stake in the outcome of the litigation."  *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023) (en banc) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)).  Standing does not exist in every case in which "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo*, *Inc. v.*

*Robins*, 578 U.S. 330, 341 (2016).  Instead, to establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  A "concrete" harm is one that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *Id.* at 417 (quoting *Spokeo*, 578 U.S. at 340–41).  Applying these standards to NYLL wage-notice and wage-statement claims, the Second Circuit has explained that "a plaintiff cannot rely on technical violations of the Labor Law" to establish standing. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 305 (2d Cir. 2024) (quotation marks and citation omitted).  A plaintiff may establish standing, however, by establishing "some causal connection between the lack of accurate notices and [a] downstream harm." *Id.* at 308.

Plaintiffs' complaint alleges only that plaintiffs were not provided with wage notices and statements. *See* Am. Compl. ¶¶ 184–86, 189–90.  This is a bare allegation of a statutory violation, without any accompanying allegations of downstream harm.  Such allegations are insufficient to plead a plaintiff's Article III standing. *See, e.g.*, *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 239 (E.D.N.Y. 2024) (dismissing NYLL wage notice and wage statement claims where plaintiff "merely alleges that Defendants failed to comply with these statutory mandates" without "alleg[ing] facts linking any legally cognizable injury" to that violation); *Jaramillo v. Latino Regal Corp.*, No. 19-CV-3104 (HG) (CLP), 2024 WL 4648135, at *9 (E.D.N.Y. Sept. 4, 2024) (same), *report and recommendation adopted*, Order dated Sept. 27, 2024; *Nicholas v. Franklin Finest Deli Corp.*, No. 23-CV-7878 (MKB) (MMH), 2025 WL 1218477, at *4 n.3 (E.D.N.Y. Apr. 28, 2025) (same).

6

Plaintiffs' attempts to supplement these allegations after the close of discovery come too late. In response to The Dolar Shop and Frank Qi's motion for summary judgment, three of the plaintiffs have supplied supplemental affidavits, which they urge the Court to consider. Tingting Lin, Di Pan, and Jianqun Zhang aver that, during their employment at The Dolar Shop, they were never given wage statements and notices, and thus were never told what the basis of their pay was, that they were entitled to overtime for any hours above forty worked in a work week, or that they were entitled to spread-of-hours pay for any work day exceeding ten hours. *See* Aff. of Tingting Lin ¶¶ 6, 16–17, 20 (Dkt. #144-5); Aff. of Di Pan ¶¶ 7, 21–23, 26 (Dkt. #144-6); Aff. of Jianqun Zhang ¶¶ 5, 25–26, 29. Had they been provided these disclosures, plaintiffs aver that "instead of acquiescing in [their] employers' paying [them] a flat monthly salary that didn't include pay for overtime hours or spread of hours days," they "would have tried to get [their] employers to give [them] correct wages." Aff. of Di Pan ¶ 27; Aff. of Tingting Lin ¶ 21; Aff. of Jianqun Zhang ¶ 30.

But this theory of liability was not raised in plaintiffs' earlier pleadings, and "courts generally do not consider . . . completely new theories of liability asserted for the first time in opposition to summary judgment." *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) (citing *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701–02 (2d Cir. 2010)); *see Smith v. City of New York*, 385 F. Supp. 3d 323, 347 n.24 (S.D.N.Y. 2019) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion." (citation omitted)). The same principle applies in the case of a new theory of standing raised for the first time in response to a summary judgment motion. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("[Plaintiff] may not effectively amend its Complaint by raising a new theory of standing in its response to a motion for summary

7

judgment."); *accord Stikas v. J.P. Morgan Chase Bank, N.A.*, No. 14-CV-1277 (PAC), 2016 WL 2851560, at *3 (S.D.N.Y. May 13, 2016).

Moreover, under the circumstances of this case, considering plaintiffs' supplemental allegations would prejudice the moving defendants. While courts have "discretion" to treat "an issue presented for the first time" in opposition to summary judgment "as an amendment of the complaint," courts consider whether the defendant would be prejudiced before allowing such an amendment. *Stratton v. Ernst & Young, LLP*, No. 15-CV-1047 (VEC), 2016 WL 6310772, at *6 (S.D.N.Y. Oct. 27, 2016) (quotation marks, brackets, and citation omitted). Tingting Lin, Di Pan, and Jianqun Zhang's theory of standing is asserted for the first time in plaintiffs' response to defendants' motion for summary judgment, based on affidavits dated after the close of discovery, containing factual allegations found nowhere in the complaint. Had plaintiffs' complaint provided fair notice to defendants regarding plaintiffs' theory of standing on their wage-notice and wage-statement claims, defendants could have then conducted discovery into, and on summary judgment challenged the sufficiency of, the evidence bearing on plaintiffs' standing. *See, e.g.*, *Lipstein v. 20X Hosp. LLC*, No. 22-CV-4812 (JLR) (JW), 2023 WL 6124048, at *11 (S.D.N.Y. Sept. 19, 2023) ("Discovery may ultimately bear out that the allegedly insufficient wage statements and notices did not actually hinder Plaintiff and others from raising issues regarding underpayment, given their reliance on the statements, the information that they had from other sources, or otherwise."). But by presenting new factual allegations for the first time in response to defendants' motion for summary judgment via affidavits that were signed and proffered only after the close of discovery, plaintiffs prejudicially deprived The Dolar Shop and Frank Qi of any opportunity at all to respond to these new contentions. This case has been pending for over nine years, with the vast majority of that time spent in discovery—at some point, plaintiffs must stand by the case that they

8

have chosen to plead.  The Court therefore declines to exercise its discretion to consider the new allegations contained in these affidavits.

This Court's decision in *Cinar v. R&G Brenner Income Tax, LLC*, No. 20-CV-1362 (RPK) (JRC), 2024 WL 4224046 (E.D.N.Y. Sept. 18, 2024), cited by plaintiffs, *see* Pls.' Opp'n 13, is not to the contrary.  Like the plaintiffs here, the *Cinar* plaintiffs had pleaded "purely technical violations of the NYLL's notice requirements."  *See Cinar*, 2024 WL 4224046, at *4.  The Court issued a *sua sponte* order to show cause directing plaintiffs to address why their wage-notice and wage-statement claims should not be dismissed for lack of standing.  *Id.* at *3.  Crucially, discovery had not concluded, and no party had moved for summary judgment.  *See id.* at *6, 12.  In response, the *Cinar* plaintiffs submitted affidavits alleging that they received inaccurate wage notices and statements, that, as a result, they did not realize they were misclassified as employees exempt from the NYLL's overtime requirements, and that had they received proper notices, they would have advocated for the pay they were entitled to.  *See id.* at *4.  The Court accepted the allegations in these declarations as constructively amending the allegations in the complaint and found that plaintiffs had "adequately pleaded standing."  *See ibid.*; *see also id.* at *5 ("[T]he Court's order to show cause called into question the sufficiency of plaintiffs' legal allegations.").  The present case is simply at a later hour—discovery has closed, and defendants have moved for summary judgment.

Accordingly, because plaintiffs have not established their standing to bring their wage-notice and wage-statement claims, The Dolar Shop and Frank Qi's motion for summary judgment is granted.

### B.    Meal Period, Recordkeeping, and Deceptive Trade Practices Claims

Plaintiffs indicate that they "do not object to the dismissal of" their claims for failure to provide meal periods in violation of Section 162 of the NYLL, violation of recordkeeping requirements at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1, and violation of New York's deceptive trade practices statute, N.Y. Gen. Bus. Law § 349.  Pls.' Opp'n 15.  Accordingly, The Dolar Shop and Frank Qi's motion for summary judgment on these claims is granted.  *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (noting that plaintiffs "are always free to abandon" certain pleaded claims in "a response to a motion for summary judgment").

### C.    Fraudulent Information Return Claim

The Dolar Shop and Frank Qi move for summary judgment on plaintiffs' claim that those defendants filed false information returns, on the grounds that plaintiffs have failed to identify any evidence suggesting that defendants "willfully" filed a fraudulent return.  The motion is granted.

Section 7434 of Title 26 "provides a private right of action for an individual who was the subject of a falsely filed information return, allowing her to bring a civil action for damages against 'any person [who] willfully files a fraudulent information return with respect to payments purported to be made to' the individual."  *Rosario v. Fresh Smoothies LLC*, No. 20-CV-5831 (LJL), 2021 WL 5847633, at *6 (S.D.N.Y. Dec. 9, 2021) (quoting 26 U.S.C. § 7434(a)).  "The term 'information return' in this provision includes forms containing, among other things, the total amount of wages paid to an employee."  *Ibid.* (citing 26 U.S.C. §§ 7434(f), 6724(d)(1)(A)(vii), 6501(d)).

The Dolar Shop and Frank Qi argue that Section 7434's requirement of willfulness "requires a showing of intentional wrongdoing."  *See* The Dolar Shop Reply 2 (Dkt. #145) (quoting *Wang v. Leo Chuliya, Ltd.*, No. 23-CV-2463 (NSR), 2024 WL 2221237, at *2 (S.D.N.Y. May 16,

2024)).  However, "where willfulness is a statutory condition of civil liability," the Supreme Court has "generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).  Although the Second Circuit has not interpreted the meaning of "willfully" in Section 7434, the D.C. Circuit has held that, consistent with the general rule, Section 7434 is satisfied where a defendant acts either knowingly or recklessly.  *See Doherty v. Turner Broad. Sys., Inc.*, 72 F.4th 324, 328–29 (D.C. Cir. 2023).  *But see Vandenheede v. Vecchio*, 541 F. App'x 577, 580 (6th Cir. 2013) (unpublished) ("[W]illfulness in [Section 7434] connotes a voluntary, intentional violation of a legal duty." (quotation marks and citation omitted)).

The Court need not decide whether "willfully" in Section 7434 reaches reckless conduct as well as knowing conduct because, even assuming it does, plaintiffs have failed to identify evidence from which a jury could find defendants acted recklessly in filing any information return.  Plaintiffs' opposition defends only the fraudulent information return claim of plaintiff Jianqun Zhang.  *See* Pls.' Opp'n 14–15.  Plaintiffs rely exclusively on the affidavit described above, *see* page 4, *supra*, in which Zhang avers that she "receive[d] a W-2 from Dolar Shop for the year 2016, but it underreported [her] wages and tips."  Aff. of Jianqun Zhang ¶ 31.  Even assuming that a jury could find from this affidavit that defendants filed a false information return, plaintiffs have not offered any evidence showing that defendants did so recklessly, let alone knowingly.  In the civil context, a person acts recklessly when he or she acts "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  The bare averment that defendants filed a false information return does not create a genuine issue of material fact as to whether they did so at least recklessly (as opposed to, for example, merely negligently).  *Cf. Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 324–25 (2d Cir.

11

2021) (finding, at the motion-to-dismiss stage, that plaintiff's "fail[ure] to allege that his managers acted in *any* manner suggesting an awareness that their actions violated or could violate the FLSA" did "not permit a plausible inference that Defendants *willfully* violated the statute—whether by actual knowledge or . . . reckless disregard").

Accordingly, The Dolar Shop and Frank Qi's motion for summary judgment on plaintiffs' claim that they filed fraudulent information returns is granted.

## II.    Shanghai Shenzhuang's Motion

Shanghai Shenzhuang moves for summary judgment on plaintiffs' FLSA and NYLL claims on the grounds that plaintiffs have not demonstrated a genuine dispute of material fact as to whether Shanghai Shenzhuang constituted plaintiffs "employer."  The motion is granted.

Plaintiffs argue that Shanghai Shenzhuang constituted their employer by virtue of the single integrated enterprise doctrine. *See* Pls.' Opp'n 9–11.  This doctrine "applies in extraordinary circumstances where plaintiff demonstrates sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 134 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).  Courts examine whether the formal corporate employer and the affiliated corporation plaintiffs seek to hold liable have (i) "interrelation of operations," (ii) "common management," (iii) "centralized control of labor relations," and (iv) "common ownership or financial control." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014); *see Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). "Although no one factor is dispositive, 'control of labor relations is the central concern.'" *Cuji v. Sistina Rest. Inc.*, No. 20-CV-5594 (AJN) (DF), 2021 WL 11493286, at *4 (S.D.N.Y. Aug. 2,

12

2021) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 227 (2d Cir. 2014)). Though the Second Circuit has not decided whether the single integrated enterprise test extends to the FLSA context, plaintiff's test has "increasingly been applied by courts within this District in FLSA cases." *Castillo v. Albert Einstein Coll. of Med. Inc.*, No. 24-CV-984 (PAE), 2025 WL 692124, at *5 n.3 (S.D.N.Y. Mar. 4, 2025); *Galvez v. InvestCloud*, No. 23-CV-11301 (KPF), 2026 WL 165737, at *6 (S.D.N.Y. Jan. 21, 2026); *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017).

Plaintiffs have not identified a triable issue of fact as to whether The Dolar Shop and Shanghai Shenzhuang constitute a single integrated enterprise for purposes of the FLSA. They principally point to evidence that the corporate parent had a limited connection to the store's management and a limited role in establishing an operational framework for the store. Pls.' Opp'n 11. But a reasonable trier of fact could not find those ties established the level of close connection required to transform Shenghai Shenzhuang from an ordinary corporate parent to a single integrated enterprise with the store it partially owns.

*Centralized control of labor relations.* Taking the most important factor first: assuming as true the evidence put forward by plaintiffs, Shenghai Shenzhuang's role in labor relations at The Dolar Shop was too limited to weigh in favor of finding the two companies to be a single integrated enterprise. It is undisputed that defendants Frank Qi and Ruby Wang were the managers responsible for day-to-day management of The Dolar Shop, with responsibilities including the daily supervision of the restaurant, the hiring and firing of employees, and the setting of wages. *See* Jialiang Pan Dep. Tr. 17:25–18:12, 35:6–10 (Dkt. #142-6); Bizhu Ye Dep. Tr. 22:2–7 (Dkt. #142-7); Gang Li Dep. Tr. 9:4–8 (Dkt. #142-8); Jianqun Zhang Dep. Tr. 22:5–19 (Dkt. #142-9); Di Pan Dep. Tr. 25:19–26:7, 27:13–15 (Dkt. #142-10); Frank Qi Dep. Tr. 23:6–10, 24:5–18,

13

48:18–19, 57:19–23, 58:9–15; Ken Cheung Dep. Tr. 15:13–19, 43:11–44:3, 64:21–25. Although Shanghai Shenzhuang hired Qi and Wang in China and sent them to work at The Dolar Shop, Frank Qi Dep. Tr. 16:17–17:10; *see* Jianqun Zhang Dep. Tr. 48:3–9; Ken Cheung Dep. Tr. 15:13–19, 27:25–28:3; Ge Li Dep. Tr. 24:11–25:4, following their transfer, Qi and Wang were "employee[s] of Dolar Shop" and "not employed by Shanghai Shenzhuang," Frank Qi Decl. ¶¶ 1–2; Yu Zhang 2021 Dep. Tr. 54:17–21; Defs.' Frank Qi Dep. Tr. 62:22–23. The parties do not dispute that The Dolar Shop paid Qi's and Wang's wages and that Zhang, the co-owner of The Dolar Shop, signed their paychecks. Frank Qi Decl. ¶ 2; Ge Li Decl. ¶ 10; Pls.' Rule 56.1 Counterstatement ¶ 15. And Shanghai Shenzhuang itself played no role in the hiring, firing, or setting of pay for any of the plaintiff-employees. *See* Ge Li Decl. ¶¶ 16–17; Frank Qi Decl. ¶ 4. While plaintiffs assert that the transferred employees remained "employee[s] of Shanghai" Shenzhuang, Pls.' Rule 56.1 Counterstatement ¶¶ 11, 13, the depositions on which they rely make no such statement of their employment status. *See, e.g.*, Frank Qi Dep. Tr. 15:12–20 (acknowledging only that Wang was "sent over from China"); Ken Cheung Dep. 15:13–19 (stating only that Wang was "sent over by the Chinese"); *see also* Local Civil Rule 56.1(d) (requiring admissible evidence to follow party's assertions in Rule 56.1 statement).

True, Ken Cheung testified that Qi had the "final call" in matters related to hiring, firing, and pay, and that, if Cheung ever disagreed with a decision made by Qi, he had to seek review from Ge Li, the executive director of Shanghai Shenzhuang. Ken Cheung Dep. Tr. 27:25–30:15. But Cheung's hypothetical that Ge Li would "take care of" any disagreements between him and Qi does not show that Shanghai Shenzhuang exercised the "level of day-to-day control over employment matters required by" the single employer doctrine, *Ennis v. TYCO Int'l Ltd.*, No. 02-CV-9070 (TPG), 2004 WL 548796, at *4 (S.D.N.Y. Mar. 18, 2004)—nor that Shanghai

14

Shenzhuang specifically participated in setting *plaintiffs'* pay or manner of issuing paystubs and wage notices, *see Musiello v. CBS Corp.*, 518 F. Supp. 3d 782, 791 (S.D.N.Y. 2021); *Snyder v. Advest, Inc.*, No. 06-CV-1426 (RMB), 2008 WL 4571502, at *7 (S.D.N.Y. June 8, 2008).

*Interrelation of operations and common management.* The undisputed evidence regarding the next two factors—interrelation of operations and common management—weighs against finding a single integrated enterprise. As to interrelation, the two companies operate separately, maintain separate facilities and separate payroll and bank accounts, and file taxes separately. *See* Ge Li Decl. ¶¶ 5–17. While the joint venture agreement required Shanghai Shenzhuang to determine "the main design of the shop," appoint managers to "impart" managerial knowhow, and provide operations handbooks, Joint Venture Agreement 3–4, an entity's "do[ing] tasks for another does not automatically make the two part of an integrated enterprise," *Laurin v. Pokoik*, No. 02-CV-1938 (LMM), 2004 WL 513999, at *5 (S.D.N.Y. Mar. 15, 2004); *Herman v. Blockbuster Ent. Grp.*, 18 F. Supp. 2d 304 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999) (finding agreement by one business to perform HR, payroll, and accounting services for another, including employees, insufficient to support finding of interrelated operations given separate offices and bank accounts and fact that employees "were entirely dedicated" to transferee business). Conversely, a subsidiary who "agree[s] to be bound by certain standards of conduct set forth by the parent's policies does not indicate" that the parent "exercised control over" it. *Fenner v. News Corp.*, No. 09-CV-9832 (LGS), 2013 WL 6244156, at *10 (S.D.N.Y. Dec. 2, 2013) (brackets and citation omitted) (collecting cases). Given the companies' separate finances, facilities, and payroll, the limited role for the corporate parent in company operations does not favor a finding that the two companies are one integrated enterprise.

Moreover, plaintiffs have not put forward evidence from which a reasonable trier of fact could find the companies shared common management.  While plaintiffs make much of Ge Li's testimony that Ken Cheung was "the managing director" in charge of the "U.S. Region" for Shanghai Shenzhuang, this testimony appears in context to refer to Cheung's undisputed role as head of The Dolar Shop in Flushing, given that Li also testified that Cheung did not "draw a salary from Shanghai Shenzhuang."  Ge Li Dep. Tr. 22:12–23:13; *see* Ge Li Decl. ¶ 17 ("None of the managers of Shanghai is also the manager of Dolar Shop, and vice versa.").

*Common ownership or financial control*.  Given the limited role of Shanghai Shenzhuang in The Dolar Shop's labor relations, operation, and management, Shenghai Shenzhuang's ownership interest in The Dolar Shop does not tilt the balance in favor of an integrated-enterprise finding.  While Shanghai Shenzhuang's 51% ownership of The Dolar Shop renders it a traditional corporate parent, a parent-subsidiary relationship is not by itself a basis for FLSA liability.  *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995) (stating that "[a] parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control[]" in the Title VII context (citation omitted)).  Because "[a] parent corporation's possession of a controlling interest in its subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability . . . courts have recognized that the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997).  Accordingly, the prong of common ownership

16

is simply "less important" in this case," as it "represent[s] [an] ordinary aspect[] of the parent-subsidiary relationship." *Meng v. Ipanema Shoe Corp.*, 73 F. Supp. 2d 392, 403 (S.D.N.Y. 1999).

"[T]he law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances." *Dobrosmylov v. DeSales Media Grp., Inc.*, 532 F. Supp. 3d 54, 63 (E.D.N.Y. 2021) (citation omitted).  This is not one of those exceptional cases. Because a reasonable trier of fact could not find The Dolar Shop and Shanghai Shenzhuang constituted a single integrated enterprise, Shanghai Shenzhuang's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by The Dolar Shop and Ying Nan Qi, a/k/a Frank Qi, and the motion for summary judgment filed by Shanghai Shenzhuang The Dolar Shop Catering Management Co., Ltd., are granted.  The Clerk of Court is respectfully directed to terminate Shanghai Shenzhuang as a defendant to this action.

SO ORDERED.

/s/  Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: March 10, 2026
        Brooklyn, New York

17